Alton **PETES**, Plaintiff-Appellant,

v.

John P. **HAYES, et al.,** Defendants,

v.

**AMERICAN OPTICAL CORPORATION, et al., Defendants-Appellees.**

No. 80–3506
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 23, 1981.

---

11. 29 C.F.R. § 1601.12(b)(1)(iii) (1977). For the current regulation, see 46 Fed.Reg. 43,037 (1981) (to be codified in 29 C.F.R. § 1601.13).

M. H. Gertler, Harry E. Forst, New Orleans, La., for plaintiff-appellant.

Allen R. Fontenot, New Orleans, La., for Aetna Cas. & Sur. Co.

Frank J. Peragine, New Orleans, La., Paul V. Cassisa, Metairie, La., William K. Christovich, New Orleans, La., for American Optical.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Alton Petes filed this diversity suit claiming that respirators which were supplied to him on his job were defective and caused his debilitating lung condition. The jury returned a verdict for the defendant, and Petes appeals. We find that the district court's special interrogatories were inconsistent with the jury instructions and therefore likely to confuse or mislead the jury. In order to correct this error, we reverse and remand.

Petes was employed by National Gypsum Company from 1948 to 1977. Beginning in February 1949, he worked as a cutter in the asbestos shingle department. Initially, he was provided with a cloth mask to screen the asbestos dust and fibers. After 1960, Petes and other employees were furnished respirators and filters manufactured by American Optical Corporation.

In July 1977, Petes had to stop work because of a lung condition which had progressively worsened until he became disabled. Petes filed the instant complaint against National Gypsum Company and American Optical Corporation, alleging that his lung condition was asbestosis. Subsequently, Petes voluntarily dismissed his claim against National Gypsum Company and proceeded to trial against American Optical Corporation on two theories: (1) the respirators and filters were defective and failed to prevent the inhalation of unsafe amounts of asbestos dust; and (2) American Optical Corporation failed to warn of possible hazards concerning the use of the respirators.

The trial record is replete with expert testimony offered by both parties. The witnesses called by Petes testified that his condition was caused by inhalation of asbestos particles. The witnesses called by American Optical Corporation testified that Petes was suffering from tuberculosis, not asbestosis, and that his condition was caused by cigarette smoking. The experts also disagreed whether tuberculosis can be caused by the inhaling of asbestos dust and particles.

The trial judge correctly instructed the jury as to the meaning of proximate cause

under Louisiana law, and he correctly charged that the finding of more than one proximate cause does not necessarily preclude recovery.[1] The case was submitted to the jury on four special interrogatories.[2] The first read:

Does plaintiff, Alton Petes, suffer from disability or disease which specifically results from the inhalation of asbestos particles during that period of his employment by National Gypsum after American Optical Corporation's respirators were placed in use? Yes or no. If no, do not go any further and return to the courtroom.

The jury answered this special interrogatory "No" and, accordingly, did not reach the other three.

Although we will not substitute our judgment as to the wording, we may not permit inconsistency between the special interrogatories and the instructions. The interrogatories must pose the questions accurately and be stated in a manner that avoids the potential for confusing or misleading the jury.

In *Abernathy v. Southern Pacific Co.*, 426 F.2d 512 (5th Cir. 1970), we approved special interrogatories after finding that they were submitted under a proper general charge, adequately tested the general verdict, and did not confuse the jury, and in no way prejudiced the losing party.

■ Applying these standards to the case at bar we are persuaded that the district judge erred.[3] The court correctly instruct-

---

1. The trial judge instructed the jury:
 If you find that the issue of proximate cause is material in the case then I instruct you that proximate cause largely depends upon the circumstances of each case. An injury is proximately caused by an act or failure to act whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury and this injury was either a direct result or a reasonable probable consequence of the act or omission. It is a natural and unbroken sequence of events that causes an accident, without intervening acts, also contributing to the accident or event. This does not mean that the law recognizes only one proximate cause of an injury or event or occasion consisting of only one factor or thing or the conduct of only one particular company or companies. On the contrary. *Many factors or things or the conduct of two or more persons or companies may operate at the same time either independently or together to cause injury and in such case may be a proximate cause.*
 (Emphasis added.)

2. Special interrogatories are authorized by Fed. R.Civ.P. 49(a), which provides in pertinent part:
 *Special Verdicts.* The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings there-

on as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.
 We have on many occasions requested, begged, pleaded with, urged, and ordained the district courts to employ this handy and workable device. *See Mixon v. Atlantic Coast Line R. R. Co.*, 370 F.2d 852 (5th Cir. 1966); *Weymouth v. Colorado Interstate Gas Co.*, 367 F.2d 84 (5th Cir. 1966); *American Oil Co. v. Hart*, 356 F.2d 657 (5th Cir. 1966); *Travelers Ins. Co. v. Busy Electric Co.*, 294 F.2d 139 (5th Cir. 1961). *See also* John R. Brown, *Federal Special Verdicts: The Doubt Eliminators*, 44 F.R.D. 338 (1967).

3. We believe that the trial judge's error was inadvertent. The record reflects that he intended to use "specifically" in the medical context. After the jury was discharged and had exited the courtroom the court stated:
 Let the verdict of the jury be entered. The verdict of the jury will be the judgment of the Court. To whatever extent it may be pertinent, I want the record to show that the term "specifically" which is included in the interrogatories to the jury is based upon the Court's reference to Webster's New Collegiate Dictionary, which described specific as with respect to a disease caused by a particular pathogen and Webster's described pathogen as a specific cause of disease (as a bacteria or virus). I make note of that simply to complete the record with respect to the objection specifically made by plaintiff's counsel as to the form of interrogatories which the Court prepared.
 The jurors did not have the advantage of this statement and we cannot assume they had

ed the jury that under Louisiana law recovery is permitted where there is more than one cause contributing to the injury. *Straley v. Calongne Drayage and Storage, Inc.*, 346 So.2d 171 (La.1977). The interrogatory was phrased "Does plaintiff, Alton Petes, suffer from disability or disease which *specifically* results from the inhalation of asbestos particles ..." (Emphasis added.) "Specifically" was not defined in the general charge. In its everyday usage, "specifically" is restrictive and could logically have been understood by the jury to mean "solely" or "only." Webster's New Twentieth Century Dictionary (2d ed. 1977) defines the ordinary meaning of "specific" as "limited; limiting; tending to specify or particularize; definite; precise." Such an interpretation, of course, is in direct conflict with the judge's instructions on proximate cause.

The conflict we perceive is not one of semantics or linguistic preferences but is one which cuts to the heart of the legal issue in this case. The jurors were correctly instructed on the applicable rules of law and then given a possibly contradictory interrogatory. The charge instructed that two or more causes of Petes' injuries would not preclude recovery; the interrogatory implied that Petes could not recover if other causes contributed to his injury.[4]

 Although we specifically approve of the district court's use of special interrogatories, which avoid the "inscrutable mystery of a general verdict [and] impenetrable uncertainty," *Tugwell v. A. F. Klaveness & Co.*, 320 F.2d 866, 868 n.2 (5th Cir. 1963), *cert. denied*, 376 U.S. 951, 84 S.Ct. 967, 11 L.Ed.2d 970 (1964), we conclude that special interrogatory number one, when compared to the jury instruction on proximate cause, was so likely to mislead and confuse the jury that it cannot be said that the contested issues were adequately presented to the jury.

REVERSED and REMANDED.

knowledge of such a specialized usage of the word "specifically."

4. The seriousness of this conflict is underscored by the fact that the jurors were instructed not to answer the other three interrogatories

if they answered "no" to the first. Consequently, the entire case was decided on the basis of the incorrect legal premise inherent in the first interrogatory.